1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD ALLEN, an individual, ) | Civil No. 06cv371 NLS |
| ) | |
| Plaintiff, ) | **ORDER DENYING DEFENDANTS'** |
| v. ) | **MOTION FOR A PRELIMINARY** |
| ) | **INJUNCTION** |
| THE GHOULISH GALLERY, an entity of ) | |
| unknown form; TIM TURNER, an individual, ) | [Doc. No. 28] |
| APRIL TURNER, an individual, and DOES 1 ) | |
| through 10, inclusive, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| TIM TURNER, an individual, APRIL ) | |
| TURNER, an individual, dba THE ) | |
| GHOULISH GALLERY, ) | |
| ) | |
| Counterclaimants, ) | |
| ) | |
| v. ) | |
| ) | |
| EDWARD ALLEN, an individual, ) | |
| ) | |
| Counterdefendant. ) | |
| ) | |

24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

1                                                                                           06cv371 NLS

*Introduction*

Before this Court is defendants/counterclaimants' motion for a preliminary injunction.[1] The Court heard oral argument on May 21, 2007. Defendants sought to enjoin plaintiff and those acting on his behalf from, either directly or indirectly:

(a) Posting disparaging comments on the internet that relate to or reference Mr. Turner or this litigation, including postings on message boards, on websites or to email addresses;

(b) Making disparaging comments, either orally or in writing, to third parties that relate to or reference Mr. Turner or this litigation, including but not limited to over the phone, at tradeshows, at conventions, through advertising mediums or on the internet;

(c) Initiating contact or causing contact to be made, including through any third party, with any customer of Mr. Turner or the Ghoulish Gallery for any reason; and

(d) Advertising that plaintiff originated the changing portrait.

The Court limited oral argument to the issues of prior restraint and damages to defendants. Having considered the parties' arguments, the Court **DENIES** defendants' motion in its entirety.

*Relevant Facts*

**Procedural Background.**

Plaintiff/counterdefendant Edward Allen filed this copyright action on February 16, 2006. Defendants/counterclaimants Tim Turner, individually and doing business as The Ghoulish Gallery, and April Turner answered and filed their counterclaims on April 3, 2006. After the Court held an Early Neutral Evaluation Conference in May 2006, the parties spent the next several months trying to negotiate a stipulated preliminary injunction to avoid causing damage to each other's reputations. *See* Mem. P. & A. 13:24-16:4. While the parties specifically identified each other's objectionable conduct, they never agreed to a stipulated injunction. Defendants finally filed this motion on March 20, 2007.

Defendants allege the following facts to support their motion.[2]

---

[1] The parties have consented to proceed before Judge Stormes for any and all further proceedings in this case. [Doc. No. 37.]

[2] The following alleged facts are summarized from defendants' memorandum of points and authorities; they are included to give context to the motion, and are not to be taken as the Court's final factual findings.

**The Parties.**

Tim Turner is a Hollywood effects artist working in the "haunt industry."  In the early 1990s he created a changing portrait through lenticular lens array technology, which allows a viewer to perceive, from the same portrait, both an antique photographic portrait and a gruesome, scary version of the same portrait, by adjusting the viewer's line of sight.

Due to complications from a car accident, Turner stopped working with the changing portraits from about 1996 to 2002.

Allen first met Turner in 1992 at a haunted house where Turner was displaying his work.  In 2003, Allen launched his website selling antique changing portraits apparently using a similar type of lenticular array technology that Turner uses.

**The Conduct at Issue.**

Turner complains that Allen has falsely advertised that his changing portraits are the "original works" and that his portraits are "award-winning."   He alleges that Allen mimicked his website and created several portraits that are confusingly similar to his portraits.  He also claims that Allen contacted at least two of his customers to tell them Turner was a thief and liar, while Allen claims that those two persons were actually his own former customers.

Turner alleges that Allen has contacted many professionals in the haunt industry to disparage his name and reputation.  Specifically, he claims that Allen has disparaged or defamed him to: (1) the editor and publisher of an industry magazine that was to feature Turner, (2) two committee members of a festival where Turner was to exhibit his work; (3) participants at a haunt industry tradeshow Turner was sponsoring, where Allen's agent yelled obscenities and disparaging remarks at Turner, tore up his business signs and assaulted Turner with a stack of papers; (4) a Hollywood director at three separate industry conventions in 2006; (5) potential customers at the Horrorfind Weekend Convention in August 2006; and (6) visitors to a haunt industry professional's message board by posting a message that Turner suffers from a "diagnosable mental disorder."  Turner also alleges that Allen intimidated one of his witnesses through a posting on an industry message board.

At the hearing, Allen represented that as of May 14, 2007, he had removed the comments available on the internet that Turner had objected to in the proposed stipulated injunction.

*Discussion*

**A.     Preliminary Injunctions.**

Preliminary injunctive relief is proper under Federal Rule of Civil Procedure 65 if the moving party shows either (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999); *Southwest Voter Registration Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003). These two tests "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Roe v. Anderson*, 134 F.3d 1400, 1402 (9th Cir. 1998).

The possibility of irreparable harm can be presumed where there is a strong likelihood of success on the merits or where there are intangible injuries such as damage to recruiting efforts and goodwill. *Apple Computer, Inc. v. Formula Intern., Inc.*, 725 F.2d 521, 525 (9th Cir. 1984); *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

Prior restraint considerations that impact commercial speech rights may also affect a preliminary injunction analysis. *See New.net, Inc. v. Lavasoft*, 356 F. Supp. 1071, 1081-90 (C.D. Cal. 2003).

**B.     Freedom of Speech.**

    **1.     Prior Restraint**

An injunction enjoining speech and expression is an example of a prior restraint on speech. *See Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 103 (1979). Courts presume that prior restraints are unconstitutional. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Prior restraints are only allowed in certain narrow circumstances constituting "exceptional cases," such as to protect military secrets in wartime or to enjoin trademark violations. *Near v. Minnesota,* 283 U.S. 697, 716 (1931); *San Francisco Arts & Athletics v. U.S.O.C.*, 483 U.S. 522, 540-541 (1987).

Defamatory statements cannot be restrained; the remedy for defamation is a damages action after publication. *New.net, Inc.,* 356 F. Supp. At 1087-88; *Gilbert v. Nat'l Enquirer*, 43 Cal.App.4th , 1135, 1144-45 (1996). The **repetition** of defamatory statements **may** be enjoined only where a Court has determined, after trial, that one party has defamed another. *See Balboa Island Village Inn, Inc. v. Lemen*, 2007 Cal. Lexis 4194 (April 26, 2007).

Here, the first three parts of defendants' proposed injunction seek to enjoin plaintiff from making disparaging comments, either orally or in writing, about defendants and this litigation, and from contacting, either directly or indirectly, any of defendants' customers.  This type of conduct cannot be enjoined.  First, the proposed injunction would put a prior restraint on plaintiff's speech, and defendants have set forth no facts or law supporting the proposition that the conduct here rises to the level of an "exceptional case" that warrants imposing a prior restraint on plaintiff's speech.  Second, the conduct sought to be enjoined appears to fall under defendants' counterclaims for trade libel, defamation and intentional interference with prospective economic advantage, for which there are other remedies at law.  In sum, defendants do not overcome the presumption that the proposed injunction is unconstitutional.  Enjoining the alleged conduct would act as a prior restraint on plaintiff's speech , violating his first amendment rights.

### 2. Commercial Speech

Commercial speech receives less protection under the first amendment than non-commercial speech.  *U.S. v. Edge Broadcasting Co.*, 509 U.S. 418, 426 (1993).  To determine commercial speech, the test is whether the speech "'propose[s] a commercial transaction.'"  *Bd. of Trustees of State University of N.Y. v. Fox*, 492 U.S. 469 (1989) (citations omitted).

Here, the fourth part of the proposed injunction seeks to enjoin plaintiff from advertising that he "originated" the changing portrait concept.  Defendants contest these two specific statements on plaintiff's website: (1) "Haunted Memories - The Original Line of Spooky Changing Portraits;" and (2) Back in April 2003, I originated the concept of using antique photographic images to create spooky changing portraits."  Mem. P. & A. 13:12-23.  Whether or not these statements constitute commercial speech, the Court cannot enjoin them.

If these statements are considered non-commercial speech, the Court cannot enjoin them because they would be a prior restraint on plaintiff's speech.  Further, defendants have other remedies for these statements, namely through their claims for false advertising and unfair competition.

If the Court takes these statements to be commercial speech, plaintiff still cannot be enjoined at this time because defendants have not shown the Court a compelling combination of the possibility of irreparable harm and likelihood of success on the merits.  First, defendants admit that they have not been

able to identify any customers who have not patronized defendants because of plaintiff's statements.[3] Second, if the Court were to presume the possibility of irreparable harm due to intangible harm to defendants' name, reputation, goodwill and advertising efforts, that possible showing is belied by the fact that defendants waited nearly a year to bring this motion. While the Court appreciates that defendants first tried to negotiate a stipulated injunction, it finds that waiting over ten months to file the motion after they had first expressed concern about plaintiff's behavior detracts from any showing of possibility of irreparable harm. Third, given the evidence currently before the Court and the fact that the Court has not found a possibility of irreparable harm, defendants have not shown a strong likelihood of success necessary to enjoin plaintiff's advertising.

Finally, defendants have not shown that the balance of hardships tips in their favor. Plaintiff is at risk of suffering first amendment violations while defendants have not identified a possibility of irreparable harm. Further, defendants have adequate remedies available to them through their asserted counterclaims.

## *Conclusion*

Defendants' proposed preliminary injunction seeks broad relief that would impose a prior restraint on plaintiff's speech. Even if the fourth part of the proposed injunction would not amount to a first amendment violation, defendants have not shown a compelling combination of likelihood of success and possibility of irreparable harm, or a balance of hardships in their favor, to warrant imposing such an injunction on plaintiff. For these reasons, the Court **DENIES** defendants' motion for a preliminary injunction in its entirety.

**IT IS SO ORDERED.**

DATED: May 23, 2007

Hon. Nita L. Stormes
U.S. Magistrate Judge

---

[3] At the hearing, plaintiff represented that there is a seven-page printout of praise about Mr. Turner on the Haunt World message board. Such statements on an industry website support the Court's present finding that defendants have not identified a possibility of irreparable harm.