1   Edward J. Allen, Pro Se
    P.O. Box 3584
2   Seal Beach, California 90740
    Telephone: (562) 810-5317
3   Facsimile: (562) 439-4080

4   Plaintiff in Pro Se

5
    JERROLD ABELES (SBN 138464)
6   BELA G. LUGOSI (SBN 35663)
    AMY I. BORLUND (SBN 205361)
7   **ARENT FOX LLP**
    445 South Figueroa Street, Suite 3750
8   Los Angeles, California  90071
    Telephone:     (213) 629-7400
9   Telecopy:      (213) 629-7401

10  Attorneys for Defendants and Counterclaimants
    Tim Turner dba The Ghoulish Gallery and April Turner
11

12              **UNITED STATES DISTRICT COURT**

13            **SOUTHERN DISTRICT OF CALIFORNIA**

14
    EDWARD ALLEN, an individual,              **CASE NO.  06CV 0371 L  NLS**
15
                          Plaintiff,
16                                            **PLAINTIFF EDWARD ALLEN'S**
    v.                                        **PROPOSED FINDINGS OF FACT**
17                                            **AND CONCLUSIONS OF LAW**
    THE GHOULISH GALLERY, an entity
18  of unknown form; TIM TURNER,  an          Complaint Filed:  February 16, 2006
    individual, APRIL TURNER, an
19  individual, and DOES 1 through 10,
    inclusive,
20
                          Defendants.
21
22  TIM TURNER, an individual, and APRIL
    TURNER, an individual, dba THE
23  GHOULISH GALLERY
24                        Counterclaimants,
25  v.
26  EDWARD ALLEN,  an individual,
27
                        Counterdefendant.
28

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff Edward Allen hereby submits his Proposed Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1.    Using html coding, text, and jpeg imagery, Plaintiff designed and built a website for his "Haunted Memories" changing portraits in May 2003.

2.    Plaintiff first displayed his changing portraits publicly at the "Fangoria" Weekend of Horrors Event in Burbank, California on the weekend of May 24th and 25th, 2003.

3.    Defendant Tim Turner registered the e-mail hypnosease@yahoo.com on May 8th, 2003.

4.    Defendant Tim Turner registered an ebay account under the user name "harrybuttcheekian" on April 28th, 2003.

5.    Defendant Tim Turner re-named his ebay account "hypnosease" on June 19th, 2003.

6.    Defendant Tim Turner re-named his ebay account "reelcreations" on June 21st, 2004.

7.    Defendant Tim Turner created a new ebay account with the username "tgg1995" on November 29th, 2005.

8.    Defendant Tim Turner built a website for "The Ghoulish Gallery" using the assistance of his webmaster Brandon Champlin.

9.    In his "About the Owner" page on www.theghoulishgallery.com, Turner wrote "For over 24 years, I've been making monsters for movies."

10.    In October 2004, the Ghoulish Gallery website stated "The secret to The Ghoulish Gallery's consistently superior product is a small, close-knit team made up of such monster/character experts as Hollywood special effects people and even a few former Walt Disney Imagineers."

11.    Defendant Tim Turner has admitted that his "team" consisted of Larry

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Carr, Ron Pardini, Brandon Champlin, Steve Cotroneo, and himself.

12.    Defendant Tim Turner has stated under oath at his deposition "I was never a Disney Imagineer."

13.    Brandon Champlin is not a Disney Imagineer.

14.    In October 2004, "The Ghoulish Gallery" website featured a stated copyright claim of "Copyright 1991" at the bottom of its various pages.

15.    In October 2004, "The Ghoulish Gallery" website also featured a section titled "Copyright Information," which stated: "The Ghoulish Gallery website is protected by U.S. and International copyright laws. Pursuant to Titles 17 of the United States Code, the author or original visually perceivable work validly provides notice of a copyright by placing the "AF," "Ó" or the word "copyright" in a conspicuous location followed by the first year of publication and text identifying the name of the owner of the copyright."

16.    Defendant April Turner has accepted check and/or money order payments in her name for "The Ghoulish Gallery's" products.

17.    April Turner is co-owner of "The Ghoulish Gallery."

18.    April Turner shares in the profits of "The Ghoulish Gallery" enterprise

19.    April Turner works to further the success of the "The Ghoulish Gallery."

20.    April Turner is listed as the business manager on the "Staff" page of the "Ghoulish Gallery" website.

21.    Defendant Tim Turner's website also stated that "The Ghoulish Gallery" was "a family run business."

22.    Defendant Tim Turner never "consulted with a professional at Eastman Kodak so that he could see his changing portrait concept to fruition."

23.    The Defendant Tim Turner never "dedicated copious amounts of time and research into lenticular technology and discovered that Eastman Kodak was, at the time, the leader in this unique art form."

24.     Eastman Kodak was not able to produce lenticular images until 1996-1997.

25.     Eastman Kodak did not produce at no cost to Defendant Tim Turner 125-150 lenticular changing portraits between the years 1992-1995.

26.     Eastman Kodak did not and could not make lenticular changing portraits from 1992-1995.

27.     Defendant Tim Turner did not debut the first prototype of his "antique photo-based changing portrait as part of the decor for a haunted house" he "designed and built for the Downtown Long Beach Business Association in 1992."

28.     Defendant Tim Turner never had any lenticular changing portraits inside the Haunted House maze he designed and built for the Downtown Long Beach Business Association.

29.     Eastman Kodak did not actually produce Defendant Tim Turner's first lenticular changing portrait.

30.     Plaintiff is the author/creator of the webpage design, text, and visual content of the "Haunted Memories" website, located at www.hauntedmemories.com

31.     Plaintiff designed a spooky eyeball pattern to use as his website's background in May 2003.

32.     Defendants Tim and April Turner advertise their services and products in interstate commerce, including via the internet, from their website located at www.theghoulishgallery.com.

33.     Defendants Tim and April Turner have co-mingled their funds into one bank account listed under April Turner's name.

34.     On August 11th, 2004, Defendant Tim Turner auctioned a Haunted Mansion mug and misspelled the word "ghoulish" as "goulish."

35.     Defendant Tim Turner ran his first ebay auction for one of his changing portraits on October 1st, 2004.

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

36.    Defendant Tim Turner has admitted that the Haunted House maze he designed and built for the Downtown Long Beach Business Association happened for only "one season" in October 1990.

37.    On or about October 29th, 2004, Defendant Tim Turner began display the characters on his website in a jpeg image of a charcoal frame that was substantially similar to the one that Plaintiff had been using on his website and in his ebay ads since 2003.

38.    Defendant Tim Turner contacted the manufacturer of the framestock, Dave Unger at Universal Framing, seeking to license the image with them exclusively.

39.    Defendant Tim Turner eventually complied with Plaintiff's "Cease and Desist" order regarding the "charcoal frame" jpeg image.

## A.    Copyright Infringement of Plaintiff's website for "Haunted Memories Changing Portraits. (Count I)

40.    That Plaintiff holds and maintains exclusive right and title to the copyright and corresponding U.S. Copyright Registration for the "Haunted Memories Changing Portraits" website, located at www.hauntedmemories.com:

a.    *Haunted Memories Changing Portraits Website* -
U.S. Copyright Registration N, TX 6-092-441
(Reg. Date:  December 13, 2004)

41.    The "Haunted Memories Changing Portraits" website, located at www.hauntedmemories.com was and is used by Plaintiff to advertise his products and services.

42.    Defendants have violated Plaintiff's copyright when designing and maintaining the look of their website.

43.    The Plaintiff began using the "Little" designation on child characters for

-4-
**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

his website in May 2003.

44.     The Plaintiff began using mini-biographies for every character on his website in May 2003.

45.     The Plaintiff purchased a brown frame at Aaron Brothers, took photographs, converted them to jpegs, and used them to display characters on his website "Haunted Memories" in May 2003.

46.     The Defendants engaged in copyright violation in April 2005, by the use of the brown frame image on their website "The Ghoulish Gallery."

47.     The Plaintiff began using the "Haunted Memories" new "Buy it Now" buttons in March 2005.

48.     The Plaintiff began the using charcoal frame jpeg image on his website in July 2003.

49.     Plaintiff took photographs of a custom assembled frame made from the Universal Framing stock, converted it to a jpeg image, and used it to display several characters on the "Haunted Memories" website.

50.     The Defendants obtained the disputed "charcoal frame" image from the Plaintiff's website.

51.     The Defendants created a competing website for their product after seeing the "Haunted Memories" website and incorporated both designs and content from Plaintiff's website.

52.     Plaintiff ran his first magazine advertisement for his "Haunted Memories Changing Portraits" in Issue # 34 of "Haunted Attraction" Magazine in August 2003.

53.     The Defendants changed their original February 2005 flyer design when they created a second version in June of 2005.

54.     The Defendants' second flyer appears substantially similar to Plaintiff's

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

magazine advertisments.

55.    The Defendants were attempting to create buyer confusion by creating a substantially similar flyer to that of the Plaintiff's magazine ads.

56.    The Defendants infringed upon the copyright for Plaintiff's "Haunted Memories" website.

57.    The Plaintiff is entitled to statutory damages as a result of the Defendants infringing upon the "Haunted Memories" website and its copyright-protected designs and content.

58.    Plaintiff is entitled to treble statutory damages due to the Defendants' willful and malicious copyright infringement of Plaintiff's website for his "Haunted Memories Changing Portraits."

59.    Plaintiff is entitled to all of his attorney's fees for the Defendants' copyright infringement of Plaintiff's "Haunted Memories" website.

## B.    Federal Unfair Competition - False Advertising Under § 43 (a) (1) (b) (COUNT II)

60.    The conduct of the Defendants proven by Edward Allen constitutes unfair competition under California Common Law.

61.    The Plaintiff was the first to create and market a line of lenticular changing portraits based on antique photographic imagery.

62.    The Plaintiff took reasonable measures to protect his business by filing a trademark, registering copyrights, etc.

63.    The Defendants falsely state that they had been doing business as "The Ghoulish Gallery" "Since 1992."

64.    In April 2005, the Defendants began falsely stating that they had been doing business as "The Ghoulish Gallery" "Since 1995."

65.    The Defendants falsely stated that the "The Ghoulish Gallery" website

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

was "Copyrighted 1991."

66.     Defendant Tim Turner admitted at his February 2007 deposition that he is not the owner any registered trademarks for "The Ghoulish Gallery."

67.     Defendants falsely implied that they had trademarked the term "Changing Portraits" by placing a "TM" after the words "Changing Portraits" on their website.

68.     Defendant Tim Turner falsely stated that he had "created antique style changing portraits in the early 1990's."

69.     The Defendants falsely stated that they employed a "team of artists" that included "a few former Disney Imagineers."

70.     The Defendant Tim Turner later stated that all artwork was created by himself.

71.     Defendant Tim Turner does not have "over 24 years experience" doing special effects work for Hollywood.

72.     Defendant Tim Turner's IMDb profile only accounts for eight years of experience.

73.     The "Ghoulish Gallery" website instruct visitors to visit the IMDb website in order to view the purported film resume of Defendant Tim Turner.

74.     The  Defendant inflated his IMDb profile to include positions held and/or titles of films that he did not actually work on.

75.     The Defendant Tim Turner hosted a fabricated and/or embellished resume on his IMDb profile.

76.     The Defendant inflated his IMDb profile to include positions held and/or titles of films that he did not actually work on.

77.     Defendant Tim Turner did not contribute "Special Makeup Effects" to the "Addams Family" movie.

78.     Did Defendant Tim Turner published false and/or misleading statements

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

on his "The Ghoulish Gallery" website when he stated that he had made changing portraits for inclusion in "The Addams Family" movie in 1991.

79.    Defendant Tim Turner published false and/or misleading statements in at least one Ebay advertisement indicating that he had made changing portraits for inclusion in "The Addams Family" movie in 1991.

80.    Defendant Tim Turner falsely stated that "while working on the Addams Family in 1990-1991," he "overheard a discussion concerning a proposed effect that was dropped from the film and saw the potential for a home consumer version of a changing portrait that could be created from old victorian photos."

81.    Defendant Tim Turner was hired by Alterion Studios in the early 1990's to work in the capacity of production assistant.

82.    Defendants falsely stated on their website "The Ghoulish Gallery" that they "get over half a million unique visitors each year."

83.    Defendant Tim Turner falsely stated that he had been employed as a Disney Imagineer.

84.    Leonard Pickel did not "ask" Tim Turner to create his custom portrait.

85.    Defendants' website feature a review of their products and services written by Brandon Champlin.

86.    Defendants knowingly published altered feedback quotes on their website "The Ghoulish Gallery."

87.    Did the Defendants knowingly published fabricated feedback quotes on their website "The Ghoulish Gallery."

88.    Defendant Tim Turner engaged fabricating positive customer testimonials about his products.

89.    Defendant Tim Turner engaged in fabricating negative customer testimonials about Plaintiff's products.

90.    Defendants fabricated the customer feedback comment attributed on

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

their website to "Erin and Colm".

91.   Defendants fabricated the customer feedback comment attributed on their website to "Brad Pitt and Jennifer Aniston."

92.   Defendants fabricated the customer feedback comment attributed on their website to "Clifford (January 2005), Cliff (May 2005) and John in Long Beach (October 2005).

93.   The Defendants fabricated the customer feedback comment attributed on their website to "Carrie V - Former Haunted Memories Customer."

94.   The e-mail sent by Carrie Vines to the Plaintiff on April 28th, 2005 bears the same IP address as Tim Turner's e-mail from October 19th, 2004.

95.   The Defendants fabricated and/or altered the customer feedback comments attributed on their website to from "Mark & Diana."

96.   Defendants fabricated and/or altered the customer feedback comment attributed on their website to "John in Canada."

97.   Ken Conley of Microlens did not write the positive feedback statement about Tim Turner on Defendants' website.

## C.   Unfair Competition - California Common Law  (COUNT III)

98.   In his e-mail dated October 19th, 2004, Defendant Tim Turner told Plaintiff "I don't give a crap if you felt your reputation was smeared."

99.   In his e-mail dated October 19th, 2004, Defendant Tim Turner told Plaintiff "I'm about to launch a counter offensive that will, in all likelihood, ruin you."

100.   Defendants have created buyer confusion between their site and Plaintiff's by designing and maintaining a website that features the use of similar frames, font styles, color scheme, black oval matting, and mini-biographies for their characters.

101.   Defendants have substantially copied the design of Plaintiff's magazine advertising.

102.   There is no basis for Defendants' claiming "Copyright 1991" on "The Ghoulish Gallery" website.

103.   The Defendants put "Copyright 1991" on their website to create the false impression that "The Ghoulish Gallery" predated "Haunted Memories."

104.   The Defendants falsified the inception date of their business .

105.   The Defendants changed the start of their business from "Since 1992" to "Since 1995."

106.   The "Copyright 1995" claim on Tim Turner's Ghoulish Gallery website is a fabrication.

107.   Defendants engaged in the unfair business practice of creating buyer confusion by choosing the same font style of "Ruben" for their company name, as Plaintiff had already done.

108.   Defendants used Plaintiff's business name "Haunted Memories" in their website metatags in an attempt to divert internet traffic from Plaintiff's site to their own.

109.   A preponderance of the evidence in this case shows that the Defendants repeatedly engaged in acts of Unfair Competition to the detriment of the Plaintiff under California Common Law and therefore the Plaintiff is entitled to damages.

110.   Plaintiff is entitled to the maximum amount of damages as a result of Defendants' engaging in Unfair Competition under California Common law.

111.   Plaintiff is entitled to all of his attorney's fees as a result of the Defendants engaging in Unfair Competition under California Common law.

112.   The Plaintiff is entitled to punitive damages as the conduct of the Defendants was intentional, willful, and malicious.

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**D.    Unfair Business Practice - California Bus. & Prof. Code §§ 17200 et seq. (COUNT IV)**

113.   The Plaintiff began using the Ruben font for the title name "Haunted Memories Changing Portraits" on his website in May 2003.  The Defendants chose to use the "Ruben" font for their company name in October 2005.

114.   In his e-mail dated October 19th, 2004, Defendant Tim Turner told Plaintiff "I don't give a crap if you felt your reputation was smeared."

115.   In his e-mail dated October 19th, 2004, Defendant Tim Turner told Plaintiff "I'm about to launch a counter offensive that will, in all likelihood, ruin you."

116.   Defendants chose to write the name "The Ghoulish Gallery" using the "Ruben" font in an attempt to create buyer confusion between their products and the Plaintiff's.

117.   The Plaintiff began using a spooky eyeball background for his website in May 2003.

118.   The Defendants engaged in buyer confusion in October 2004, by the use of a similar spooky eyeball background on their website "The Ghoulish Gallery."

119.   The Plaintiff began using black oval matting on various character pictures for his website in May 2003.

120.   The Defendants attempted to create buyer confusion in October 2004 by the use of the black oval matting on their website "The Ghoulish Gallery."

121.   The Plaintiff began using the "Little" designation on child characters for his website in May 2003.

122.   The Defendants attempted to create buyer confusion in October 2004, by the use of the "Little" designation on their website "The Ghoulish Gallery."

123.   The Plaintiff began using mini-biographies for every character on his website in May 2003.

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

124.   The Defendants attempted to create buyer confusion in October 2004, by the use of the mini-biographies on their website "The Ghoulish Gallery."

125.   The Defendants attempted to create buyer confusion in April 2005, by the use of the same brown frame image on their website "The Ghoulish Gallery."

126.   The Plaintiff began using the disputed "Buy it Now" button design on his website in March 2005.

127.   The Defendants began using a similar "Buy it Now" button design on their website in April 2005.

128.   The Plaintiff began using charcoal frames for certain characters on his website in July 2003.

129.   The Defendants did not take their own photograph of the "charcoal frame" -- they obtained it unlawfully from the Plaintiff's website.

130.   The Defendants engaged in buyer confusion in October 2004, by the use of the same charcoal frame image on their website "The Ghoulish Gallery."

131.   The Defendants unlawfully used Plaintiff's business name "Haunted Memories" in their website metatags to divert internet traffic from Plaintiff's site to their own.

132.   The Defendants knowingly publish a biased review of their products and services written by their own employee, Brandon Champlin.

133.   The Defendants stated that Brandon Champlin was an objective "Halloween Expert" rather than an employee and contributing artist of "The Ghoulish Gallery."

134.   The Defendants knowingly published altered feedback quotes on their website "The Ghoulish Gallery."

135.   The Defendants knowingly published fabricated feedback quotes on their website "The Ghoulish Gallery."

136.   Defendant Tim Turner engaged in the unfair business practice of

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

fabricating positive customer testimonials about his own "Ghoulish Gallery" products and customer service.

137.   Defendant Tim Turner engaged in the unfair business practice of fabricating negative customer testimonials about Plaintiff's "Haunted Memories" products and services.

138.   Defendant Tim Turner created the postings attributed to "Mary Sinclair" on the Haunted Attraction message board.

139.   Defendants have engaged in Unfair Business Practices in violation of California Bus. & Prof. Code §§ 17200 et seq. and the Plaintiff is entitled to damages.

140.   Plaintiff is entitled to injunctive relief as a result of Defendants' engaging in Unfair Business Practices in violation of California Bus. & Prof. Code §§ 17200 et seq.

141.   Plaintiff is entitled to all of his attorney's fees as a result of Defendants' engaging in Unfair Business Practices in violation of California Bus. & Prof. Code §§ 17200 et seq.

142.   The evidence proves that the conduct of the Defendants was intentional and willful and thus, the Plaintiff entitled to punitive damages.

**E.     Intentional interference with Prospective Economic Advantage (COUNT V)**

143.   The Defendants were aware of Plaintiff's business relationship with re-seller Roy Brashears of www.hauntedventures.com.

144.   Defendant Tim Turner told Brashears that Plaintiff had stolen his ideas/concept for antique photo-based changing portraits.

145.   Roy Brashears stated in his feedback quote to Turner "You were the first to offer this unique product to the public many years ago."

-13-

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

146.   Tim Turner told Roy Breashears that he had been the first to create and offer a line of lenticular changing portraits featuring antique photographic imagery.

147.   Defendant Tim Turner told Breashears that Plaintiff was "negative" and should be avoided.

148.   Roy Brashears began carrying Tim Turner's changing portraits at the same time that he advised the Plaintiff that he was dropping his products.

149.   Breashears' decision to drop Plaintiff's products was based upon false statements about the Plaintiff that Tim Turner had communicated to him.

150.   Carrie Vines was a satisfied customer of the Plaintiff's before she purchased product from the Defendants.

151.   Carrie Vines write the Plaintiff with praise for his work numerous times in the months following the completion of their April-May 2004 transaction.

152.   Carrie Vines end up writing a negative review of the Plaintiff's artwork and customer service in April 2005.

153.   The Defendants were aware of Plaintiff's prior transaction with Carrie Vines.

154.   The Defendants and/or their agent/employee Brandon Champlin communicated false and damaging statements about the Plaintiff to Ms. Vines.

155.   Defendants' statements to the Vines included Tim Turner's false and damaging claim of having had his changing portrait "concept" stolen by the Plaintiff.

156.   The Defendants interfered with Plaintiff's fledgling relationship with would-be "Haunted Memories" re-seller Chris Russell.

157.   Chris Russell had agreed to represent Plaintiff's products at several tradeshows thoughout the Midwest / East Coast over the summer of 2005.

158.   Chris Russell reneged on this agreement with Plaintiff after meeting and speaking with Defendant Tim Turner at the Ironstock event in June of 2005.

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

159.   Chris Russell then began to represent and/or promote Defendants "Ghoulish Gallery" products instead.

160.   Falsehoods about Turner's supposed prior experience and Allen's supposed theft of his "idea" caused Chris Russell to shun the Plaintiff and transact with his competitor instead.

161.   Chris Russell was told false and damaging statements about the Plaintiff by Defendant Tim Turner.

162.   Defendant Tim Turner conveyed false and/or misleading information about his experience in the field of lenticular changing portrait regarding his originality and / or "expertise."

163.   Defendant Tim Turner called tradeshow promoter Missy Ballance in September 2005.

164.   Defendant Tim Turner attempted to dissuade Ballance from allowing Plaintiff participate in her then-upcoming folk art event "All-I-Day."

165.   Defendant Tim Turner told Missy Ballance that Plaintiff had been "unethical" in his business dealings.

166.   Defendant Tim Turner told Missy Ballance that Plaintiff had stolen the antique photo based changing portrait concept from him at the Long Beach Haunted House maze in the early 1990s.

167.   Defendant Tim Turner told Ballance that he would not participate in the show if Allen were allowed to attend.

168.   Defendant Tim Turner communicated similar false statements about the Plaintiff to another folk art show called "Halloween and Vine."

169.   Tim Turner's false and damaging statements resulted in Plaintiff's being banned from exhibiting at their event.

170.   Plaintiff's artwork samples sent back marked "Refused - Return to Sender" by "Halloween and Vine" committee member, Ginny Betourne.

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

171.   Defendants engaged in Intentional Interference with Plaintiff's prospective economic advantage by tarnishing Plaintiff's image with falsehoods  and the Plaintiff is entitled to damages.

172.   Plaintiff is entitled to all of his attorney's fees for Defendants' engaging in Intentional Interference with Plaintiff's prospective economic advantage.

173.   Plaintiff is entitled to punitive damages as the Defendant's Intentional Interference with his prospective economic advantage was willful and malicious.

**F.     Trade Libel (COUNT VI)**

174.   In his e-mail dated October 19th, 2004, Defendant Tim Turner told Plaintiff "I don't give a crap if you felt your reputation was smeared."

175.   Defendant in September 2005 Tim Turner suggested on a Haunted Industry message board, located at www.hauntedattraction.com, that the Plaintiff was "unethical" and "unprofessional."

176.   In his e-mail dated October 19th, 2004, Defendant Tim Turner told Plaintiff "I'm about to launch a counter offensive that will, in all likelihood, ruin you."

177.   Defendant Tim Turner suggested in an email to Bill Mauerhan that Plaintiff  engaged in price gouging.

178.   Defendant Tim Turner wrote in an email to Jodi Infurnari that Plaintiff engaged in "mud slinging."

179.   Defendants implied that Plaintiff's products were "poorly crafted" "knock-offs" on their website "The Ghoulish Gallery".

180.   Defendants falsely stated that Plaintiff "does not guarantee his work."

181.   Defendants suggested that Plaintiff "was curt and unprofessional to say the least" in the fabricated feedback quote attributed to Plaintiff's former customer

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Carrie Vines.

182.   Carrie Vines' criticism of Allen's product and services is not factually accurate as stated in the feedback comment attributed to her on "The Ghoulish Gallery" website.

183.   Evidence of Plaintiff's e-mail correspondence with Carrie Vines shows that he did not treat her in a manner that was "curt and unprofessional, to say the least."

184.   Evidence shows that Plaintiff Edward Allen did not ship the Vines' order late.

185.   Carrie Vines was prompted to write a damaging review of Plaintiff's products and services after the Defendants communicated false and damaging statements to her regarding Plaintiff.

186.   Vines never contacted the Plaintiff with her supposed concerns before submitting and/or agreeing to the posting of her negative review of his products/services.

187.   The Plaintiff contact Vines via e-mail in a good faith effort to resolve a discovered problem.

188.   The evidence shows that the Defendants tarnished Plaintiff's image with falsehoods that prompted the Vines to write shun Plaintiff and write a damaging review, and thus constitutes tortious interference with Plaintiff's business.

189.   Defendants are the actual authors of the feedback quote that is attributed to her.

190.   Carrie Vines did not author the e-mail purportedly sent by her to the Plaintiff on April 28th, 2005, as it was sent from Turner's I.P. address.

191.   Plaintiff had a civil phone conversation with Vines following the receipt of the April 28th, 2005 e-mail, and tried to work things out with her.

192.   The Defendants stated on their website "We are the first. We will be the

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

last one standing."

193.   Tim Turner engaged in trade libel against the Plaintiff by hosting the customer review from "Carrie V." on his website.

194.   Tim Turner engaged in trade libel against the Plaintiff by posting false and damaging statements about the Plaintiff under the pseudonym "Mary Sinclair" on the "Haunted Attraction" message board.

## CONCLUSIONS OF LAW

The following issues of law, and no others, remain to be litigated upon the trial:

**A.    Copyright infringement of Plaintiff's website for "Haunted Memories Changing Portraits. (COUNT I)**

1.     Plaintiff's claims are based upon a Federally Registered Copyright.

2.     Defendants copied Plaintiff's website and advertising materials.

3.     Plaintiff's website is the subject of a Federally Registered copyright.

4.     Plaintiff is the legal owner of the copyright of the "Haunted Memories" website and all of the original content contained within.

5.     Plaintiff holds a valid a copyright to the content and design of the "Haunted Memories" website which the Defendants infringed.

6.     By copyrighting the design of his website, Plaintiff took reasonable precautions to protect the design and content of the website for his business "Haunted Memories Changing Portraits."

7.     Defendant Tim Turner is not the author and lawful common copyright owner, or licensee, of the materials for which Plaintiff claims ownership and which is the foundation of Plaintiff's Complaint.

8.     None of the Plaintiff's claims are barred by the doctrine of "unclean hands."

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

9.     Defendants had access to the "Haunted Memories" website alleged to be infringed.

10.    Defendants create a competing website for their product after seeing the "Haunted Memories" website.

11.    Defendants incorporate designs and content from Plaintiff's website in their website.

12.    In creating their website for "The Ghoulish Gallery," the actions of the Defendants did not constitute a "fair use" of Plaintiff's designs and content under the Copyright Act.

13.    Defendants obtained imagery from Plaintiff's "Haunted Memories" website through improper means

14.    Defendants unlawfully obtained imagery of the charcoal frame from the "Haunted Memories" website, and that constitutes copyright infringement.

15.    Defendants unlawfully obtained imagery of the brown frame from the "Haunted Memories" website, and that constitutes copyright infringement.

16.    Defendants' infringement of Plaintiff's copyrights was intentional and willful.

17.    The Defendants' copying the Plaintiff's brown frame image was done willfully and with malice.

18.    The Defendants' copying the Plaintiff's charcoal frame image was done willfully and with malice.

19.    The Defendants' copying the Plaintiff's mini-biographies image done willfully and with malice.

20.    The Defendants' copying the general look of the Plaintiff's website, "Haunted Memories" was done willfully and with malice.

21.    The Plaintiff's claims are valid because Defendants' conduct was not justified or privileged.

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

22.    Defendants acted with intent to deceive in the course of committing the acts underlying Plaintiff's copyright infringement claims.

23.    Plaintiff's claims herein are valid because there has been significant confusion created between the goods of Plaintiff and the Defendants.

24.    Plaintiff can demonstrate that he has suffered actual harm as a result of Defendants' conduct.

25.    The damages sought by the Plaintiff are legitimate as he has registered copyrights on the items that he claims Defendants have infringed.

26.    Plaintiff's claims are valid because the Defendants conducted their infringements willfully and with full knowledge and awareness of the copyright laws.

27.    The conduct of the Defendants was willful, for the purposes of increased statutory damages, for Defendants' copyright infringement of Plaintiff's website for "Haunted Memories Changing Portraits"

28.    Defendants infringed upon the Plaintiff's copyright for his "Haunted Memories" website and thus, the Plaintiff is entitled to an injunction restraining Defendants, their distributors, officers, agents and employees, and all persons acting in concert with them, from engaging in further such acts in violation of the copyright laws.

29.    Plaintiff entitled to statutory damages since Defendants infringed the "Haunted Memories" website's copyright protected designs and content.

30.    Plaintiff deserves to be awarded treble statutory damages due to the Defendants' willful and malicious copyright infringement of Plaintiff's website for "Haunted Memories Changing Portraits."

31.    Plaintiff is able to demonstrate that Defendants infringed upon a registered copyright, and thus Plaintiff is entitled to attorneys' fees under 17 U.S.C. 504 as the prevailing party.

32.    Plaintiff is entitled to declaratory and injunctive relief on the allegations

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

of the Complaint.

33.     All of Plaintiff's claims are valid as Plaintiff to reasonable steps to protect his creations and thus mitigate his damages.

34.     Plaintiff's claims herein are valid because Plaintiff did suffer damages and Defendants earned profits and/or gained unfair advantages as a result of their actions.

**B.     Federal Unfair Competition - False Advertising (COUNT II)**

35.     Defendants unlawfully made actionable false statements of fact about the goods, services, or commercial activity of their business "The Ghoulish Gallery."

36.     The conduct of the Defendants proven by Edward Allen constitutes false advertising under Section 43(a)(1)(B) of the Lanham act.

37.     Defendants unlawfully made and/or published false and damaging statements of fact about the goods, services, or commercial activity of Plaintiff's competing business "Haunted Memories Changing Portraits."

38.     The false statements made by Defendants either deceived, or have the potential to deceived, a substantial portion of its targeted audience.

39.     The false statements made by Defendants are likely to affect the purchasing decisions of its audience.

40.     The false statements made by the Defendants were employed specifically for the purpose of influencing consumers to buy Defendants' products.

41.     The false statements made by the Defendants involved goods or services in interstate commerce.

42.     The Defendants do not hold a valid copyright for "The Ghoulish Gallery" dating back to 1991.

43.     The Defendants falsely advertised when they stated that they held a valid copyright for "The Ghoulish Gallery" dating back to 1991.

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

44.   The Defendants do not hold a valid copyright for "The Ghoulish Gallery" dating back to 1995.

45.   The Defendants falsely advertised that they hold a valid copyright for "The Ghoulish Gallery" dating back to 1995.

46.   In 2005, the Defendants claimed to have been doing business as "The Ghoulish Gallery" for "ten years."

47.   The Defendants have engaged in false advertising by claiming that they have been doing business as "The Ghoulish Gallery" "Since 1995."

48.   The Defendant has engaged in false advertising by falsely stating that he originated the concept of an "antique photo-based" lenticular changing portrait in the "early 1990's."

49.   Defendant Tim Turner engaged in false advertising by falsely stating that he had "created antique style changing portraits in the early 1990's."

50.   The Defendants have obtained gains, profits, and advantages as a result of false statements.

51.   The false statements made by Defendants either resulted in, or were likely to result in, injury to the Plaintiff.

52.   Defendant Tim Turner engaged in the practice of false advertising by fabricating claims of having done special effects work for Hollywood.

53.   Defendant Tim Turner engaged in the practice of false advertising by stating that he is a "veteran special effects artist."

54.   The evidence shows that Defendants' fabricated the negative review attributed to "Carrie V. - Former 'Haunted Memories' customer," and that constitutes False Advertising.

55.   The evidence shows that Defendants' fabricated the positive review of Defendants' product attributed to "Erin & Colm" and that constitute False Advertising.

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

56.    The evidence shows that Defendants' fabricated the negative review of Plaintiff's product attributed to "John in Canada" and that constitutes False Advertising.

57.    The evidence shows that Defendants' fabricated the review attributed to "John/Cliff/Clifford in Long Beach" and thus engaged in False Advertising.

58.    The evidence shows that Defendants' fabricated the positive review of Defendants' product attributed to "Brad Pitt and Jennifer Anniston and thus engaged in False Advertising.

59.    The evidence shows that Defendants' fabricated the positive review of Defendants products attributed to "Mark & Diana" and thus engaged in False Advertising.

60.    Feedback fabrication constitutes false advertising.

61.    Altered feedback constitute false advertising.

62.    The Defendants engage in false advertising by publishing altered customer feedback on their website.

63.    The Defendants obtained gains, profits, and advantages as a result of their false advertising statements.

64.    The Plaintiff has suffered, and will continue to suffer irreparable damages resulting from Defendants' unlawful conduct, including, but not limited to, the direct diversion of consumers and accompanying sales from Plaintiff to Defendants.

65.    Plaintiff is entitled to recovery on the allegations of the Complaint relating to false advertising because Defendant's advertisements contain false statements.

66.    The evidence shows that Defendants engaged in the unlawful practice of false advertising, and the Plaintiff is entitled to an injunction restraining Defendants, their distributors, officers, agents and employees, and all persons acting in concert

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

with them, from engaging in further such acts.

67.   The evidence shows that the Defendants engaged in false advertising and thus, the Plaintiff is entitled to damages.

68.   Plaintiff is entitled to all of his attorneys' fees for Defendants' engagement in unfair business practices through false advertising.

## C.   Unfair Competition - California Common Law

69.   The conduct of the Defendants proven by Edward Allen constitutes unfair competition under California common law.

70.   The Plaintiff invested substantial time, money, talent, and effort in the development of his changing portrait characters and the design of the website for his business "Haunted Memories Changing Portraits."

71.   The Defendants unlawfully appropriated the Plaintiff's works at little or no cost.

72.   The Defendants unlawfully appropriated Plaintiff's images, designs, concepts, and products without the specific approval or authorization to do so.

73.   The evidence shows that the Plaintiff was using the "Ruben" font for his changing portrait business, "Haunted Memories," before the Defendants used it for their changing portrait business.

74.   Defendants used unfair and unlawful means in an attempt to compete with Plaintiff.

75.   The evidence shows that Defendants' fabricated their customer feedback comments from "Carrie V.," "John/Cliff/Clifford in Long Beach," "Brad Pitt and Jennifer Aniston," "John in Canada," "Ken Conley," "Mark & Diana," and/or "Erin & Colm" and that constitutes Unfair Competition.

76.   The fabrication of positive feedback comments for one's own business constitutes unfair competition.

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

77.     The fabrication of positive feedback comments for one's own business constitutes fraud.

78.     The material alteration of feedback constitutes unfair competition under California Common Law.

79.     The evidence shows that Defendants engaged in unfair competition; thus the Plaintiff entitled to an injunction restraining Defendants, their distributors, officers, agents and employees, and all persons acting in concert with them, from engaging in further such acts in violation of the unfair competition.

80.     Plaintiff is entitled to statutory damages for Defendants engaging in unfair competition.

81.     Plaintiff is entitled to all of his attorney's fees as a result of the Defendants engaging in unfair competition."

**D.    Unfair Business Practice (California Business & Prof. Code §§ 17200 et seq.) (COUNT IV)**

82.     The conduct of the Defendants proven by Edward Allen constitutes unfair business practices under California Business and Professions Code Section 17200 et seq.

83.     Defendants used unlawful and unfair means in attempt to compete with Plaintiff.

84.     Defendants engaged in unfair competition and unfair business practices against the Plaintiff in violation of Cal. Bus. & Prof. Code §§ 17200 et seq.

85.     Defendants unlawfully appropriated Plaintiff's images, designs, concepts, and/or products without specific approval or authorization to do so and have they used unlawful and unfair means in an attempt to compete with Plaintiff.

86.     In creating advertisements for their business that used identical font styles for both their business name (the "Ruben" font) and the tagline underneath (the

"Rudelsberg" font) the Defendants unlawfully created advertisements that were substantially similar in design to Plaintiff's pre-existing advertisements.

87.     The Defendants have a legal duty to distinguish the look and feel of their advertisements from those of the Plaintiff's under the laws prohibiting Unfair Competition.

88.     Defendants have acted with intent to deceive in the course of committing the acts underlying Plaintiff's copyright infringement claims.

89.     Defendants engaged in the unfair business practice of falsifying their copyright claim of 1991.

90.     The Defendants have created buyer confusion by writing the name of their business in the same ("Ruben") font as the Plaintiff after it had been in use by the Plaintiff for 17 months previous to Defendants.

91.     The Defendants have created buyer confusion by using a substantially similar brown frame jpeg image on their website as the Plaintiff after it had been in use by the Plaintiff for 17 months previous to Defendants.

92.     The Defendants have created buyer confusion by incorporating the same black oval matting effect into their changing portrait designs as the Plaintiff had been using 17 months previously.

93.     The Defendants create buyer confusion by using a similar "spooky eyes" background for their website as the one that had been in use by the Plaintiff for 17 months prior to existence of their website.

94.     The Defendants created buyer confusion by using the same charcoal frame jpeg image as the one Plaintiff had been using on his site for 15 months prior to the existence of "The Ghoulish Gallery" website.

95.     The Defendants created buyer confusion by using the same "Buy it Now" buttons as the Plaintiff after they had been in use by the Plaintiff for 1 month previous to Defendants.

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

96.    The Defendants created buyer confusion by designating the child characters as "Little" after it had been in use by the Plaintiff for 17 months previous to Defendants.

97.    The Defendants create buyer confusion by using a advertisement flyer featuring most of the same elements or color, composition, and style.

98.    The Defendants engaged in unfair business practice by creating buyer confusion.

99.    The Defendants engaged in unfair business practices by publishing a biased review of "The Ghoulish Gallery" website, products and/or customer service written by their employee Brandon Champlin.

100.    The Plaintiff been irreparably damaged as a direct and proximate result of Defendant's conduct.

101.    The Plaintiff is entitled to injunctive relief whereby Defendants shall cease such unlawful business practices.

102.    The Plaintiff is entitled to an award of damages as provided pursuant to Cal. Bus. & Prof. Code § 17203.

**E.    Intentional Interference with Prospective Economic Advantage (COUNT V)**

103.    The conduct proven by Edward Allen constitutes intentional interference with prospective economic advantage under California law.

104.    Plaintiff's claim for intentional interference with prospective economic advantage is valid because Plaintiff had an economic relationship with the third parties referenced in the Complaint that would have resulted in an economic benefit to Plaintiff.

105.    Plaintiff's claim for intentional interference with prospective economic advantage is valid because Defendants were well aware of the economic relationship between Plaintiff and the third parties referenced in the Complaint.

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

106.   Plaintiff's claim for intentional interference with prospective economic advantage is valid because Defendants actually stated their intent to disrupt the Plaintiff's business.

107.   Plaintiff's claim for intentional interference with prospective economic advantage is valid because there were existing economic relationships between Plaintiff and the third parties referenced in the Complaint, and those relationships were disrupted based on Defendant's conduct.

108.   Defendants had knowledge of Plaintiff's existing customers and business relationships.

109.   Defendants intentionally interfered with Plaintiff's existing customers and business relationships by directly diverting Plaintiff's existing customers and business relationships to Defendants' website.

110.   As a direct and proximate cause of Defendants action, the Plaintiff has been and continues to be irreparably damaged.

111.   The Defendants intentionally interfered with Plaintiff's relationship with at least one resale customer.

112.   This interference with at least one resale customer resulted in a loss of sales for Plaintiff Edward Allen.

113.   This interference with at least one resale customer resulted in an unlawful gain of economic advantage for the Defendants.

114.   The conduct of Defendants constituted intentional interference with the prospective economic advantage of Plaintiff.

115.   The Defendants have engaged in intentional interference with prospective economic advantage and Plaintiff is entitled to an award of damages as may be proven at trial.

116.   A communication of false statements has materially and substantially induced current and potential customers not to conduct business with the Plaintiff

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Edward Allen.

117.   As a direct result of Defendants' conduct, Plaintiff has lost sales from current and/or potential customers.

118.   As a direct and proximate result of Defendants' conduct, has Plaintiff has been irreparably damaged.

119.   Plaintiff is entitled to injunctive relief whereby Defendants shall cease communicating false statements disparaging Plaintiff and the originality and/or quality of Plaintiff's products.

120.   Plaintiff is entitled to an award of damages from Defendants as a result of lost sales from current and/or potential customers.

### F.   Trade Libel (COUNT VI)

121.   Plaintiff's claim for Trade Libel is valid because Defendants have made false statements disparaging Plaintiff and the quality of Plaintiff's products.

122.   The statements made by or on behalf of Defendants about Plaintiff or Plaintiff's products are actionable.

123.   Defendants have hosted false statements disparaging Plaintiff and the quality of Plaintiff's products on "The Ghoulish Gallery" website.

124.   The Defendants have communicated these false statements to other persons and/or entities orally and in writing.

125.   The laws governing Trade Libel make it illegal for a competitor to fabricate a negative review of a competitor's product.

126.   The laws governing Trade Libel make it illegal for a competitor to knowingly host a fabricated negative review of a competitor's product.

127.   Defendants have engaged in Trade Libel by diverting Plaintiff's former customer Carrie Vines business away from the Plaintiff with falsehoods.

128.   Plaintiff entitled to an award of damages for Defendants' interference

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

with his former customers.

129.   The Defendants communication of false statements has materially and substantially induced current and potential customers not to conduct business with the Plaintiff Edward Allen.

130.   The conduct of the Defendants proven by Edward Allen constitutes trade libel under California law.

131.   As a direct result of Defendants' conduct, Plaintiff has lost sales from current and/or potential customers.

132.   As a direct and proximate result of Defendants' conduct, Plaintiff has been irreparably damaged.

133.   The Plaintiff is entitled to injunctive relief whereby Defendants shall cease communicating such false statements disparaging Plaintiff and the quality of Plaintiff's products.

134.   The Plaintiff entitled to an award of damages from Defendants as a result of lost sales from current and/or potential customers.

135.   The First Amendment to the U.S. Constitution does not provide a defense to the actions of the Defendants under Plaintiff's claims of false advertising, unfair competition, unfair business practices, and trade libel.

136.   All of Plaintiff's claims herein are valid because at all pertinent times, each of the Defendants did not maintain his or her separate existence, and acted as the alter ego of the other.

Defendants' Counterclaim

1.      None of Edward Allen's conduct proven by Tim Turner constitutes false advertising under Section 43(a)(1) of the Lanham Act.

2.      None of Edward Allen's conduct proven by Tim Turner constitutes untrue or misleading advertising under California Business and Professions Code

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Section 17500.

3.      None of Edward Allen's conduct proven by Tim Turner constitutes unfair competition under California Business and Professions Code Section 17200 et seq.

4.      None of Edward Allen's conduct proven by Tim Turner constitutes unfair competition under California common law.

5.      None of Edward Allen's conduct proven by Tim Turner constitutes intentional interference with prospective economic advantage under California law.

6.      None of Edward Allen's conduct proven by Tim Turner constitutes trade libel under California law.

7.      None of Edward Allen's conduct proven by Tim Turner constitutes defamation under California law.

8.      The First Amendment to the U.S. Constitution provides a complete defense to some or all of Defendant's claims for false advertising, unfair competition, unfair business practices, and trade libel.

9.      Defendants are not entitled to damages on their Counterclaim.

10.      Defendants have not proven that Edward Allen's conduct was unlawful, and therefore are not entitled to an injunction against the Plaintiff.

11.      Defendants' claims are barred because they cannot demonstrate they have suffered actual harm as a result of the Plaintiff's conduct.

12.      Defendants are barred from recovery for declaratory and injuctive relief on the allegations of their Countersuit because Defendants have an adequate remedy at law.

13.      Defendants counterclaims herein are barred because Defendants have failed to mitigate their alleged damages.

14.      Defendants claims are barred because they are guilty of unclean hands and, therefore, are barred from any legal and equitable relief under each of the

purported causes of action in the Complaint.

15.   Defendants' claims are barred because Defendants did not suffer any damages and Plaintiff did not earn any profits as a result of the actions of the Defendants alleged in the complaint.

16.   Defendants claims for Plaintiff's allgeged Intentional Interference with Prospective Economic Advantage are barred because Plaintiff did not disrupt any alledged economic relationship that the Defendants' may have had with anyone.

17.   Defendants' claim for Trade Libel is barred because truth is a complete defense to defamation claims.

18.   Defendants are barred from recovering on the allegations of their Counterclaim relating to false advertising because Plaintiff's advertisements do not contain false statements.

19.   Defendants are not entitled to any attorneys' fees.

20.   Defendants are entitled to recover their litigation expenses.

21.   Defendants' attorneys did not investigate their clients' fabricated claims with due diligence and have thus brought the Defendants countersuit against the Plaintiff for the sole purposes of harassing him and causing him undue financial loss. Thus, the Plaintiff requests and is entitled to additional damages for suffering malicious prosecution.

Dated:_____          _____

                                                      Hon. Nita L. Stormes


APPROVED AS TO FORM AND CONTENT:

s/EDWARD ALLEN/s

Plaintiff in Pro Se_____

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**