1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

EDWARD ALLEN, an individual,

            Plaintiff,

v.

THE GHOULISH GALLERY, an entity of
unknown form; TIM TURNER, an individual,
APRIL TURNER, an individual, and DOES 1
through 10, inclusive,

            Defendants.

TIM TURNER, an individual, APRIL
TURNER, an individual, dba THE
GHOULISH GALLERY,

            Counterclaimants,

v.

EDWARD ALLEN, an individual,

            Counterdefendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil No. 06cv371 NLS

**ORDER:**

**(1) DENYING PLAINTIFF'S EX PARTE
APPLICATION FOR EXTENSION OF
TIME TO FILE MOTION FOR
ATTORNEY'S FEES [Doc. No. 149];**

**(2) DENYING PLAINTIFF'S MOTION
FOR ATTORNEY'S FEES AND COSTS
[Doc. No. 156]; and**

**(3) GRANTING DEFENDANTS'
MOTION FOR ATTORNEY'S FEES
[Doc. No. 158].**

/ / /

/ / /

/ / /

/ / /

/ / /

**RELEVANT BACKGROUND**

**The Trial.**

The Court held a bench trial in this matter.  At trial Edward Allen (Plaintiff) pursued his claims against defendants Tim Turner dba The Ghoulish Gallery and April Turner (collectively, Defendants). At the end of Plaintiff's case defendant April Turner moved for a nonsuit.  The Court granted the motion.

Before trial April Turner requested to dismiss her counterclaims against Plaintiff.  *See* Mem. & Ruling, p.2, n.1 [Doc. No. 135].  In its Memorandum and Ruling, the Court explained that April Turner was no longer a party in the case, and focused its ruling on Tim Turner (Defendant).

The trial lasted five days.  Plaintiff represented himself.  He had an assistant with him at counsel's table.  The Court afforded both parties thirteen hours and forty-five minutes, exclusive of breaks, to prosecute and defend their respective cases.  The Court was mindful that Plaintiff was proceeding with his case pro se and presumably without the help of legal counsel.  For example, the Court always accepted Plaintiff's trial documents even though he filed most of them late.  *See, e.g.,* Plaintiff's Second Amended Pretrial Disclosures [Doc. No. 75 (due July 11 but filed July 19, 2007)]; Plaintiff's Objections to Defendant's Pretrial Disclosures [Doc. No. 82 (due Aug. 3 but filed Aug. 4, 2007)]; Plaintiff's Oppositions to Motions in Limine [Doc. Nos. 105, 106 (due Sept. 24 but filed Sept. 25, 2007)]; Revised Pretrial Order [Doc. No. 113 (due Sept. 25 but filed Sept. 28, 2007)]; Joint Final Exhibit List [Doc. No. 116 (due Sept. 25 but filed Sept. 28, 2007)]; Plaintiff's Final Witness List [Doc. No. 118 (due Sept. 25 but filed Sept. 28, 2007)]; Plaintiff's Proposed Findings of Fact and Conclusions of Law (Doc. No. 119 (due Sept. 25 but filed Sept. 30, 2007)].  The Court generously gave him a second opportunity to try to present valid evidence of his copyright.  And, though Plaintiff ran out of his allotted time at trial, the Court gave him extra time to give a closing argument.

At trial, Plaintiff testified on direct exam until the second afternoon of trial.  Most of the exhibits he testified to revolved around the components of the parties' websites, such as the font, gallery pages, frames, background pattern, matting, character biographies and use of the word "Little."  He also testified about his copyright claim on re-direct exam.  While Plaintiff's direct exam of Defendant touched on all issues, it focused on issues relevant to the copyright claim.  Defendant's counsel did a

2

direct exam of Plaintiff on day five of trial, and took significant time to go through each argument Plaintiff posed in his copyright claim and rebutted it with a number of exhibits.

On day one of trial, Plaintiff requested judicial notice of the certificate of copyright registration. The Court denied the request without prejudice because the certificate, on its own, was not evidence of what was allegedly copyrighted. Mindful that he was proceeding pro se, the Court allowed Plaintiff an additional opportunity to provide visual depictions of the copyrighted material. On day four of trial, the Court held a special hearing where Plaintiff presented to the Court and to opposing counsel–for the first time–a copy of a CD rom. The copied CD rom allegedly contained Plaintiff's copyrighted material, and Plaintiff testified that his agent submitted the original CD rom to the copyright office. The Court ultimately denied the request for judicial notice of the CD rom because Plaintiff did not adequately authenticate it. The Court did recognize, however, that Plaintiff presented evidence that screenshots printed from the CD rom were accurate representations of what Plaintiff created and sought to copyright.

In his pre-trial brief, Plaintiff devoted over eleven pages to his copyright claim and used less than seven pages to discuss his remaining five claims. In his post-trial brief, Plaintiff spent over six pages discussing his copyright claim, while he spent less than nine pages discussing his other five claims in the complaint.

**The Court's Ruling.**

On November 21, 2007, the Court entered judgment as to all the claims and counterclaims. Plaintiff prevailed on his claims for false advertising under the Lanham Act and unfair business practices under California's Business and Professions Code sections 17200 *et seq*. Defendant successfully defended against Plaintiff's claims for copyright infringement, common law unfair competition, intentional interference with prospective economic advantage and trade libel.

Plaintiff successfully defended all of Defendant's counterclaims, specifically, false advertising under the Lanham Act, false or misleading statements under state law, common law unfair competition, intentional interference with prospective economic advantage, trade libel and defamation.

In its ruling the Court spent over seven pages addressing Plaintiff's copyright claim. It devoted approximately seventeen pages to discuss the remaining eleven claims.

**Motions for Attorney's Fees.**

On December 5, 2007, Defendants filed a motion for attorney's fees.  Plaintiff filed a motion for attorney's fees on December 12, 2007.  On January 2, 2008 Plaintiff filed an ex parte motion for an extension of time to file his motion for attorney's fees.  After the Court received and reviewed all pleadings associated with the motions, the Court ordered most of the documents stricken from the record because they  included confidential statements from settlement negotiations.  Plaintiff's pleadings also included personal attacks on Defendants and their counsel which violated this Court's rules governing professionalism.  *See* Jan. 16, 2008 Order.  The Court specifically identified the line numbers or paragraphs of the text that it wanted deleted, and allowed the parties to re-file redacted versions of the stricken documents by January 23, 2008.

**DISCUSSION**

**Timeliness Under Rule 54.[1]**

Federal Rule of Civil Procedure 54(d)(2)(A) requires a prevailing party to make a claim for attorney's fees by motion.  The motion must be filed no later than 14 days after the entry of judgment.  Fed. R. Civ. Proc. 54(d)(2)(B)(i).  Civil Local Rule 54.1 states that the service and filing of an attorney's fees motion shall "in no event be later than fourteen (14) days after entry of the decree or judgment."  To request the acceptance of an untimely filed motion, the applicant may file an ex parte application for extension of time, only if he or she files that application before the 14 days has expired.  Fed. R. Civ. Proc. 6(b)(1).  If the time to file the attorney's fees motion has already expired, any request to extend the deadline must be made through a fully noticed motion that demonstrates the party failed to act because of excusable neglect.  Fed. R. Civ. Proc. 6(b)(1)(B).

"Failure to comply with the time limit in Rule 54 is a sufficient reason to deny a motion for fees absent some compelling showing of good cause."  *Petrone v. Veritas Software Corp.*, 496 F.3d 962, 972 (9th Cir. 2007) (affirming denial of attorney's fees motion because it was filed 15 days late and movant did not show a compelling reason for the delay).  To show excusable neglect for the delay, a court must examine these factors under Rule 6(b): "(1) the danger of prejudice to the opposing party; (2) the length

---

[1]Unless otherwise specified, all references to "Rule" will refer to a Federal Rule of Civil Procedure.

1   of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the

2   movant acted in good faith." *Id.* at 973 (internal quotations omitted).  "[I]nadvertence, ignorance of the

3   rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Committee for*

4   *Idaho's High Desert v. Yost*, 92 F.3d 814, 824 (9th Cir. 1996) (citing possible examples of excusable

5   neglect as "illness, injury or death of counsel, or members of his family, or fire, flood, vandalism or

6   destruction of counsel's law office or word processing equipment").

7           Here, Plaintiff filed his fees motion December 12, 2007, seven days after the deadline.  He

8   waited until January 2, 2008–the day before his reply was due–to file an ex parte application requesting

9   that the Court accept his untimely motion.  To show excusable neglect for his late filing, Plaintiff argues

10  that Defendant still had ample time to file an opposition.  Plaintiff also argues he "was confused by the

11  wording of the court's document titled 'Memorandum and Ruling Following Trial' which stated '***The***

12  ***Clerk is hereby directed to enter judgment . . .***'", and that based on that language, he did not think that

13  judgment had yet been entered.  Pl.'s Ex Parte Application, p.3 (emphasis in original).  Finally, Plaintiff

14  says that after a brief illness he was able to file his declaration late.

15          Here, Plaintiff's request that the Court accept the late attorney's fees motion is procedurally

16  improper.  Plaintiff had already missed the 14-day deadline, so he should have made any request to

17  accept the late-filed motion by a fully noticed motion, and not by an ex parte application.  Further,

18  considering the substance of the motion, the Court finds that Defendants were prejudiced by the

19  untimely filing of the motion because Plaintiff filed the declaration to support his motion on December

20  28 [Stricken Doc. No. 147], the day *after* Defendants had filed their opposition [Stricken Doc. No. 143].

21  Finally, Plaintiff's argument that he did not understand the language "the Clerk is hereby directed to

22  enter judgment" is unavailing because, even if the wording confused him, he could have called on a

23  number of resources–including his attorney that he admits to consulting with throughout this process–to

24  clarify the meaning.  *See* Pl.'s Mem. Ps&As p.5, ll.20-21; pp. 2-6, lower left corner (includes attorney

25  Matthew Becker's name and address); Allen Decl. In Support of Pl.'s Motion ¶ 9.

26          While this Court has extended Plaintiff numerous courtesies in allowing him extra time to file

27  pleadings, it did so because (1) it was operating under the belief that Plaintiff was proceeding pro se;

28  and (2) the deadlines at issue were imposed by this Court's own orders.  In his moving papers Plaintiff

1    admits that he, in fact, has not been proceeding pro se and has been contracting work to his attorney.

2    But now, both federal statute and local rule impose the 14-day deadline at issue.  The Court is bound by

3    pertinent authority to make a finding of excusable neglect before exercising its discretion on whether to

4    accept the filing.  Based on Plaintiff's procedural violations, especially in light of his collaboration with

5    counsel, and his lack of any substantive reason for the late filing, this Court cannot make a finding of

6    excusable neglect that meets the standard set forth in Rule 6(b).  Accordingly, the Court **DENIES**

7    Plaintiff's ex parte application for an extension of time to file his motion for attorney's fees and

8    **DENIES** his motion for attorney's fees as untimely.  Notwithstanding this finding, the Court analyzes

9    the substance of Plaintiff's motion and also denies it on alternative grounds, as explained below.

10    **Plaintiff's Motion for Fees and Costs.**

11         **1.**      **Request for Attorney's Fees.**

12       The Court found in Plaintiff's favor on one aspect of his false advertising claim, finding that

13    Defendant violated the Lanham Act, § 43(a), 15 U.S.C. § 1125(a)(1)(B).[2]  Specifically, the Court found

14    Defendant's promotional statements that the Ghoulish Gallery had been in the portrait changing

15    business since 1995 were either "false, or at the very least misled, confused or deceived consumers."

16    Mem. & Ruling Following Trial ("Ruling"), pp.13-14.  Now, Plaintiff asks for attorney's fees and costs

17    for prevailing on his false advertising claim.  Pl.'s Amended Mem. Ps&As, p.2.

18       A court, using its discretion, may grant a plaintiff damages for violations of the Lanham Act:

19    "the plaintiff shall be entitled... and subject to principles of equity, to recover (1) defendant's profits, (2)

20    any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a).  Even

21    though Plaintiff did not present evidence of actual lost sales, the Court used its equitable power under 15

22    U.S.C. § 1117(a) and awarded Plaintiff $ 2,500 in damages.  Ruling, p.15.  The Court also awarded

23    Plaintiff injunctive relief, and required Defendant to remove any statement from his website that stated

24    The Ghoulish Gallery had been in the changing portrait business since 1995.

25       The court, in exceptional cases, may award attorney's fees to the prevailing party for violations

26    of 15 U.S.C. § 1125(a). 15 U.S.C. § 1117(a); *see U-Haul Intern., Inc. v. Jartran, Inc.*, 793 F.2d 1034,

27

28         [2]Plaintiff did not prevail on his claim insofar that it alleged Defendant fabricated customer feedback on The Ghoulish Gallery website.

1    1042 (9th Cir. 1986) (trademark infringement cases are instructive; the Ninth Circuit has stated "we see

2    no significant distinction between false advertising cases and other cases under Lanham Act § 43(a)").

3    Exceptional cases contemplate "conduct that is malicious, fraudulent, deliberate, or wilful." *Int'l*

4    *Olympic Committee v. San Francisco Arts & Athletics*, 781 F.2d 733, 738 (9th Cir. 1986) (internal

5    quotes omitted); *see McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 364 (9th Cir.1996) ("[e]xceptional

6    cases include bad faith or other opprobrious conduct.") (internal quotes omitted).  Intentional acts do not

7    necessarily equate with the malicious, fraudulent, deliberate or willful conduct usually required before

8    deeming a case exceptional.  *Watec Co., Ltd. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005) (jury finding of

9    intentional infringement does not necessarily make a case exceptional).  Further, the statute's use of the

10   word "may" makes the award discretionary, even if the conduct fits within the standard of an

11   exceptional case. *See, e.g., Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th

12   Cir.1985).

13           Plaintiff argues that Defendant acted in bad faith because Defendant sent Plaintiff an

14   inflammatory email and provided dubious evidence and testimony to defend the false advertising claim.

15   *See* Pl.'s Mem. Ps&As pp.3-5.  Plaintiff says he spent a total of $87,645.50 on attorney's fees, including

16   fees incurred after he went "pro se."  He attributes 20% of those fees to his copyright claim, and the

17   remaining 80% to litigating the false advertising claim, which he says is impossible to separate from the

18   cost of litigating the remaining claims.

19           Plaintiff does not persuade the Court with his arguments.  First, the email Defendant sent to

20   Plaintiff in October 2004 has nothing to do with the any of the facts involving the false advertising

21   claim.  Second, the Court evaluated the evidence Defendant provided and made a determination on the

22   false advertising claim based on that evidence.  Third, in finding Defendant violated the federal false

23   advertising law, the Court held that Defendant made statements that either were false, *or*, misled,

24   confused or deceived consumers.  The Court never determined that Defendant's acts were intentional.  It

25   never found that Defendant's evidence was fabricated.  And, it never concluded that Defendant's actions

26   in making the statements were malicious, fraudulent, deliberate or wilful.

27           Based on these findings, the Court finds that this is *not* an exceptional case for purposes of

28   awarding attorney's fees and costs for the false advertising violation.  The Court has already considered

how to compensate Plaintiff for any losses he may have suffered, and awarded him damages and injunctive relief.  The principles of equity do not dictate that he also recover attorney's fees or costs for the false advertising claim.  Further, to the extent Plaintiff attempts to recover fees for prevailing on the false advertising counterclaim, the Court finds that Defendant's acts were not malicious, fraudulent, deliberate or wilful because he raised debatable issues of law and fact.  Therefore, as an alternative to the denial of Plaintiff's motion based on timeliness, the Court also **DENIES** Plaintiff's motion for attorney's fees on substantive grounds.

### 2.    Request for Costs.

Civil Local Rule 54.1 allows the prevailing party to file and serve a bill of costs "in no event . . . later than fourteen (14) days after entry of the decree or judgment."  The request must itemize the costs and be supported by a memorandum of costs and affidavit stating that "the costs claimed are allowable by law, are correctly stated, and were necessarily incurred."  Civ. Local R. 54.1.  Within his motion for attorney's fees Plaintiff makes a summary request for costs for this action.

The Court has no grounds on which to award costs to Plaintiff.  Plaintiff has not been deemed the overall prevailing party in this case.  He filed his request for costs late and did not show excusable neglect for the untimely filing.  He did not itemize the costs.  He made no attempt to show that they are allowable by law, correctly stated and were necessarily incurred.  Considering all these procedural shortcomings, the Court **DENIES** Plaintiff's request for costs.

### Defendants' Motion for Attorney's Fees.

### 1.    Entitlement to Attorney's Fees.

The Court found that Defendant did not commit copyright infringement.  Specifically, the Court did a side-by-side comparison of Plaintiff's work with Defendant's work, and concluded that under both the applicable objective and subjective tests, any similarities between the selection and/or arrangement of the websites were not substantial enough to qualify as copyright infringement.  Ruling, p. 10.  Further, the Court granted April Turner's motion for nonsuit.  Together, these Defendants move the Court for an order awarding them reasonable attorney's fees in the amount of $61,250.00, plus the fees

1   they incur with bringing this motion, based on their prevailing against Plaintiff in his copyright claim.[3]

2   Under the Copyright Act, a court in its discretion may  "award a reasonable attorneys' fee to the

3   prevailing party as part of the costs."  17 U.S.C. § 505.  The court must treat prevailing plaintiffs and

4   prevailing defendants alike when deciding whether to award attorney's fees.  *Fogerty v. Fantasy Inc.*,

5   510 U.S. 517, 534-535 (1994) (rejecting the dual standard that prevailing plaintiffs should generally be

6   granted attorneys' fees and prevailing defendants should be awarded fees only when the plaintiff's

7   copyright claim was frivolous, in bad faith or unreasonable); *Historical Research v. Cabral*, 80 F.3d

8   377, 378 (9th Cir. 1996).  In determining whether to grant attorney's fees, the court may consider this

9   non-exclusive list of factors: frivolousness; motivation; objective unreasonableness (both legal and

10  factual); the need to advance considerations of compensation and deterrence; and promotion of the

11  Copyright Act's objectives.  *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994) (citing *Fogerty*, 510

12  U.S. at 535 n.1).  Exceptional circumstances are not a prerequisite for awarding fees for a copyright

13  claim.  *Historical Research*, 80 F.3d at 378.

14  Defendants argue they are entitled to fees as the prevailing party for defending the copyright

15  claim because Plaintiff's copyright claim was frivolous and objectively unreasonable, and because

16  awarding fees advances considerations of compensation and deterrence.  They also ask for their fees

17  incurred in connection with bringing this motion.  Plaintiff advances mostly inapplicable arguments in

18  opposing Defendants' fee claim, arguing that Defendants brought their counterclaims (which did not

19  include a counterclaim for copyright infringement) in bad faith.  Regarding frivolousness, Plaintiff cites

20  to a non-conclusive statement in the Court's ruling regarding proof of whether Defendant was a

21  "copycat" of Plaintiff's *unprotected* work.  That statement related to Defendant's counterclaim for trade

22  libel and is inapposite to the issue here.

23  The Court finds that Plaintiff's copyright claim was frivolous and objectively unreasonable.

24  Plaintiff claimed to hold a valid copyright in the entire content of the "Haunted Memories Changing

25  Portrait Website."  For the first fourteen months of this case–most notably during the time the complaint

26  was filed and the parties conducted and completed discovery–Plaintiff was represented exclusively by

27

28  [3]While April Turner is entitled to her costs as the prevailing party on all claims, she limits her request to reasonable attorney's fees. Defs.' Mem. Ps&As, p.2, n.2.

9

1   counsel.  Apparently the only discovery Plaintiff produced relevant to his copyright was a copy of the

2   registration certificate that listed the name of the website and the nature of the work as "audiovisual

3   material."  He never produced any evidence of what he actually copyrighted.  As Plaintiff proceeded

4   with his case while misrepresenting his status as a "pro se" party, the Court afforded him every

5   opportunity to present evidence, any evidence, of what, exactly, constituted his copyrighted work.

6   Plaintiff was not able to produce any such evidence until the fourth day of a five-day trial when he

7   proffered an unauthenticated CD rom as evidence of his original copyrighted work.  While the Court

8   admitted his evidence, it found that Plaintiff failed to prove he held a valid copyright in any of the

9   individual components of the website.  The Court found that Plaintiff established evidence of a

10  protectable copyright in the selection, arrangement, and presentation of his website by only a

11  preponderance of the evidence, and that the copyright was not entitled to a presumption of validity.

12  Ruling, p. 7

13       In the end, of the hundreds exhibits admitted, only six exhibits–Trial Exs. 55-6 to 55-11–showed

14  any evidence of Plaintiff's copyright.  The Court and Defendants saw these exhibits for the first time on

15  the fourth day of trial.  Therefore, for most of Plaintiff's case in chief where he testified or examined

16  Defendant about numerous exhibits related to their websites, that testimony and those exhibits were

17  irrelevant to Plaintiff's copyright claim.  In defending the claim, Defendant succinctly presented several

18  exhibits that convincingly showed Defendant did not infringe Plaintiff's copyrighted work.

19       Even after the Court admitted evidence of Plaintiff's copyright, it remained unclear about how,

20  exactly, Plaintiff claimed Defendant was infringing his copyright.  *See* Ruling, p.6.  The Court therefore

21  examined nine individual components of Plaintiff's website and the selection, arrangement, and

22  presentation of his website.  The Court found that none of the individual elements were entitled to

23  copyright protection.  *See* Ruling pp.5-6.  For example, Plaintiff claimed protection in his use of the

24  "Buy It Now" button.  The Court found that "Buy It Now" buttons are commonly used in the public

25  domain as a feature of retail websites, and concluded that use of the "Buy It Now" button was not

26  original to Plaintiff nor entitled him to copyright protection for it.  In another example, Plaintiff claimed

27  protection in a charcoal colored frame that he used to display his portraits.  Ruling p. 6.  The Court

28  found that the frame itself is constructed with publicly available materials and is one commonly used to

1  display "scary" photographs; thus it was not a proper subject for copyright protection.  Ruling p. 6.  The

2  Court also compared Plaintiff's selection, arrangement and presentation of his website as it looked in

3  December 2004 (the date of the copyright registration) with several versions of Defendant's website.

4  *See* Ruling pp.6-10.  The Court considered the use of color, background wallpaper, text, specific gallery

5  portraits, specific frames, fonts, mats and original mini-biographies on Plaintiff's website.  Comparing

6  all those elements, using the objective test the Court found only one substantial similarity between the

7  two websites, which was use of the Ruben font for the business name and Rudelsberg font for the tag

8  line.  Ruling p.9.  Substantial evidence showed that Plaintiff did not create either font, they are both

9  publicly available and they are both commonly used in the haunt industry.  Ruling pp. 6, 9.  Using the

10  subjective test, the Court found that the websites were not substantially similar.  Ruling p. 9.  Overall,

11  the Court found that Defendant did not infringe any of Plaintiff's protected work.

12      Plaintiff continued with his copyright claim despite never identifying or producing  any evidence

13  of an actual copyright in discovery, and only producing minimal evidence of it at trial.  The evidence he

14  did produce was unavailing and did not raise a debatable issue of law or fact.  Further, Plaintiff cannot

15  rely on his "pro se" status to try to excuse his behavior, because throughout the relevant parts of the

16  case–the filing of the complaint and through discovery–Plaintiff was represented exclusively by counsel.

17  And even when Plaintiff was apparently proceeding "pro se," he was in fact represented by counsel.

18  Based on these facts Plaintiff's copyright claim was frivolous and objectively unreasonable and

19  Defendants are entitled to recover their attorney's fees for defending the copyright claim.  *See Maljack*

20  *Prod. Inc., v. Goodtimes Home Video Corp.*, 81 F.3d 881, 889 (9th Cir. 1996) (finding defendant

21  entitled to reasonable attorneys' fees after concluding the copyright claims were objectively

22  unreasonable); *see also Florentine Art Studio v. Vedet K. Corp.*, 891 F. Supp. 532, 541-42 (C.D. Cal.

23  1995) (finding plaintiff's case was objectively unreasonable because he litigated despite knowing that

24  defendants had never copied one of the works and while knowing there were multiple opportunities for

25  innocent copyright infringement in the industry so that any copying here was probably innocent).

26      In addition to awarding fees based on the unreasonableness and frivolousness of the claim, a fee

27  award is warranted to advance considerations of compensation and deterrence.  Plaintiff's actions forced

28  Defendants to incur substantial cost, time and effort to defend a claim for which Plaintiff had no

legitimate basis.  Defendants should be compensated for defending such a claim, especially in light of Defendant's counsel having to invest substantially more time in dealing with a pro se plaintiff than they would if dealing directly with counsel.  *See* Borlund Decl. ¶¶ 13, 15.  Further, at trial the parties referred to other litigation where Plaintiff has sued Defendant.  *See, e.g.,* Defs.' Trial Brief, p.13, ll.5-9 [Doc. No. 102].[4]  A fee award is appropriate so that Plaintiff may fully consider and appreciate the monetary, emotional and physical costs of litigating unsubstantiated claims.[5]  Encouraging such an appreciation will help the parties focus on the real claims at issue, and will promote judicial economy by allowing the Court to focus its resources on warranted claims.

In light of these findings, the Court **GRANTS** Defendants' motion for attorney's fees.  The Court also **GRANTS** Defendants' request for the fees associated with bringing this motion.

### 2.    Reasonableness of Defendants' Attorney's Fees.

Under Rule 54(d)(2)(C), the court may decide issues of liability for fees before receiving submissions on the value of services.  Here, the Court has found that Plaintiff must pay Defendants for their attorney's fees incurred in defending the copyright claim.  Defendants represent that they incurred in excess of $245,000 in total fees.  They object to providing actual time and billing records to Plaintiff due to the possibility of ongoing litigation.  Defs.' Mem. Ps&As p.9, n.3.  They estimate that they spent 50% of the fees in defending the complaint and 50% in prosecuting the counterclaim.  The Court finds this estimate to be reasonable.

Defendants also say of the fees incurred in defending the complaint, half of those fees went specifically to defending the copyright claim.  The Court finds this to be a very reasonable estimate, as it

---

[4]Defendants explained in their trial brief: "To discourage any negative discussion of his own behavior, Plaintiff has often threatened to sue individuals who speak against him.  In fact, earlier this year, Plaintiff filed another lawsuit in the Superior Court of Los Angeles against Turner and three others alleging various causes of action including, but not limited to slander, defamation, and libel in connection with the Haunt X Convention in 2006."

[5]In a post-trial filing where he asked the Court to preserve certain evidence, Plaintiff expressly referred to another lawsuit that he filed against Defendants and their counsel: "Plaintiff respectfully requests that the court preserves [*sic*] the original book submitted as evidence of Tim Turner's "Mother's Journal" (Trial Exhibit 180-6) for use in future proceedings.  These proceedings include, but are not limited to, a pending action for **MALICIOUS PROSECUTION** against Defendants and Counterclaimants Tim Turner and April Turner, and their attorneys, including, but not limited to, Amy L. Borlund (SBN 205361), Bela G. Lugosi (SBN 35663), and Jerrold Abeles (SBN 138464)."  Pl.'s Ex Parte Application for the Preservation of Evidence, p.3, ll.15-21 (emphasis in original) [Doc. No. 137].

1  finds that Plaintiff's primary focus in prosecuting his complaint was his copyright claim.  For example,

2  in his pretrial and post-trial briefs and evidence at trial, Plaintiff primarily focused on the copyright issue

3  and devoted substantial more attention to that claim alone than to the combination of his remaining

4  claims and defense of the counterclaims.

5       To determine the reasonableness of the totality of the fees from which the Court can apportion

6  25% of the fees requested to defense of the copyright claim, the Court must examine, and allow Plaintiff

7  an opportunity to object to, the billing records.  *See In re Washington Pub. Power Supply System Secur.*

8  *Litig.*, 19 F.3d 1291, 1305-06 (9th Cir. 1994) (requiring a fully detailed itemization of the date, hours and

9  nature of the work performed).  Mindful of Defendants' confidentiality concerns, the Court **ORDERS**

10  Defendants to **file redacted copies** of their billing records documenting the hours expended.  The billing

11  records shall be redacted so as to remove all information that is protected by the attorney-client and

12  work-product privileges.  Defendants must also file a declaration summarily identifying how many

13  hours Jerrold Abeles, Bela Lugosi, Amy Borlund and Jennifer Terry each worked on this matter.  The

14  Court already has information on the special skill and experience of counsel as well as their billing rates.

15  Defendants must file the redacted bills and declaration by ***March 5, 2008***.  Plaintiff may file objections

16  to the billing entries by ***March 12, 2008***.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)

17  ("the party opposing the fee application has a burden of rebuttal that requires submission of evidence to

18  the district court challenging the accuracy and reasonableness of the hours charged").

19       **IT IS SO ORDERED.**

20  DATED:  February 19, 2008

21

22  Hon. Nita L. Stormes
    U.S. Magistrate Judge

23

24

25

26

27

28

06cv371 NLS